IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PAMELA LOWRANCE, Individually and as Wrongful Death Representative of Danny Lowrance,<br><br>    Plaintiff,<br><br>v.<br><br>CORECIVIC, ET AL.,<br><br>    Defendants. | NO. 3:23-CV-01159<br><br>JUDGE RICHARDSON |

## **ORDER**

Pending before the Court is the motion to dismiss (Doc. No. 35, "Motion") filed by all Defendants, namely CoreCivic, Inc., Correctional Medicine Associates, P.C., Martin Frink, Sara Owen, M.D., Misty Roberson, and Trousdale County, Tennessee. Via the Motion, Defendants request that this Court dismiss all of Plaintiff's claims in her second amended complaint (Doc. No. 34, "Second Amended Complaint") for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants filed a memorandum in support of their Motion (Doc. No. 36, "Memorandum"), and Plaintiff filed a response to the Motion. (Doc. No. 38, "Response"). Defendants then replied to Plaintiff's Response (Doc. No. 41, "Reply") and thereafter filed a notice of supplemental authority in support of their Motion. (Doc. No. 42, "Supplemental Authority").

For the reasons set forth herein, the Motion is GRANTED IN PART AND DENIED IN PART. Specifically, it is granted: (a) in full with respect to the federal claims, in that all federal claims are dismissed for failure to state a claim pursuant to Rule 12(b)(6); and (b) only in part as

to the state-claw claims, in that although those claims are dismissed as requested, such dismissal is based on declination of jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) rather than on failure to state a claim pursuant to Rule 12(b)(6).

## PROCEDURAL BACKGROUND

This matter arises from the death of Danny Lowrance ("Lowrance"), who was incarcerated at the Trousdale Turner Correctional Center ("TTCC"), a facility operated by CoreCivic, Inc. ("CoreCivic") pursuant to a contract with Trousdale County, Tennessee. On November 1, 2023, Plaintiff Pamela Lowrance ("Plaintiff"), individually and as the wrongful-death representative of her son, initiated this action against two entities and four individuals (collectively, "Defendants"). The three entities were CoreCivic, Trousdale County, and Correctional Medicine Associates, P.C. ("CMA"), and several individual defendants—namely, Warden Martin Frink, Dr. Sara Owen, and Nurse Practitioner Misty Roberson (collectively, "Defendants"). (Doc. No. 1). On November 26, 2023 Plaintiff filed an amended complaint (which neither added nor dropped any Defendants) as of right. (Doc. No. 12). Following Defendants' filing of a motion to dismiss (Doc. No. 28) the amended complaint, Plaintiff was granted leave to file a second amended complaint on February 20, 2024. (Doc. No. 33). The Second Amended Complaint was filed the same day, and since then it has served as the operative pleading.

Defendants thereafter filed the Motion, arguing that Plaintiff's Second Amended Complaint fails to state any claim upon which relief can be granted under either federal or state law.

## FACTS[1]

At the time of his death on April 10, 2023, Lowrance was a convicted inmate housed at TTCC. Prior to his transfer to TTCC, Lowrance was incarcerated at Riverbend Maximum Security Institution ("RMSI") where, on June 2, 2022, he was evaluated for complaints of tooth pain. (Doc. No. 34 ¶ 14). Medical staff at RMSI noted broken and missing teeth and submitted a referral for dental care. (*Id.*). On July 24, 2022, before being seen by a dentist, Lowrance was transferred to TTCC. (*Id.* ¶ 16).

At TTCC, Lowrance underwent a medical intake screening on July 25, 2022. Plaintiff alleges that his medical chart—including the prior dental referral—was reviewed by Defendant Misty Roberson during the intake process. (*Id.* ¶¶ 21–22). Nevertheless, according to the Second Amended Complaint, Lowrance was never scheduled for nor received a dental consultation at TTCC. (*Id.* ¶ 22). No physician orders appear in the record between July 27, 2022, and April 5, 2023. (*Id.*).

On April 4, 2023, Lowrance submitted a sick-call request reporting chest pains and difficulty breathing. (*Id.* ¶ 23). Approximately thirteen hours later, on April 5, 2023, prison staff initiated a medical code for Lowrance due to stroke-like symptoms, and he was transported to a hospital, where he was diagnosed with a right middle cerebral artery stroke and treated with mechanical thrombectomy. He died five days later. (*Id.* ¶ 29).

---

[1] The facts herein are taken from the Second Amended Complaint. (Doc. No. 34). For purposes of the instant Motion, the facts in the Second Amended Complaint are accepted as true, except to the extent that they are qualified herein (as, for example, by "Plaintiff alleges") to denote that they are not being taken as true but instead are set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true.

Plaintiff contends that the failure to provide Lowrance with dental treatment led to sepsis, which (according to Plaintiff) contributed to his eventual stroke and death. She further alleges that the failure to respond promptly to Lowrance's April 4 sick-call request constitutes deliberate indifference to a serious medical need. Plaintiff asserts that these lapses in care were not isolated incidents, but rather the result of CoreCivic's and CMA's longstanding and systemic practices of understaffing and deprioritizing inmate healthcare in favor of cost-cutting. In support, she cites audits, news reports, and prior lawsuits concerning staffing and healthcare deficiencies at TTCC and other CoreCivic facilities. (*Id.* ¶¶ 34–47).

Plaintiff brings multiple claims against all Defendants, including claims under 42 U.S.C. § 1983 for deliberate indifference in violation of the Eighth Amendment, as well as claims of negligence, gross negligence, and healthcare liability under Tennessee law.

## LEGAL STANDARD

For purposes of a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all the factual allegations in the complaint as true, as it has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of

action sufficient. *Id.*; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it is appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

## ANALYSIS

Plaintiff brings seven counts arising from the death of her son during his incarceration at TTCF. In Count I, she asserts a claim under 42 U.S.C. § 1983 against CoreCivic and Trousdale County for violations of the Eighth and Fourteenth Amendments, based on policies, customs, and failures to train or supervise. In Count II, she asserts a § 1983 claim against Warden Marten Frink in his individual capacity, alleging deliberate indifference through his personal involvement in and acquiescence to unconstitutional practices. In Count III, Plaintiff brings a § 1983 claim against CMA based on its institutional policies, practices, and supervisory failures. Count IV asserts § 1983 claims against Nurse Misty Roberson and Dr. Sara Owen for personally failing to provide necessary medical care and for knowingly disregarding serious medical needs. In Count V, Plaintiff alleges state-law healthcare liability against CMA pursuant to the Tennessee Healthcare Liability Act, Tenn. Code Ann. § 29-26-101 et seq., including vicarious liability for the actions of Roberson and Owen. In Counts VI and VII, Plaintiff alleges negligence *per se* under Tennessee law against CoreCivic, Trousdale County, and Warden Frink, based on violations of statutory and regulatory duties owed to incarcerated individuals and gross negligence against all Defendants.

In applying the Rule 12(b)(6) standard to Plaintiff's claims under 42 U.S.C. § 1983, the Court begins by stating the (familiar) elements of such claims: a plaintiff must plausibly allege that (1) he was deprived of a right secured by the Constitution or federal law, and (2) the deprivation occurred under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). When asserting such claims against a corporate or municipal defendant, a plaintiff must further establish that the constitutional deprivation resulted from a policy or custom of that entity. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

I. <u>Section 1983 Claims Against CoreCivic, CMA, and Trousdale County</u>

Plaintiff brings Eighth Amendment claims against Defendants CoreCivic, CMA, and Trousdale County under § 1983 (in Counts I and III), alleging that these entities maintained customs and policies of deliberate indifference to inmate medical needs. Specifically, Plaintiff alleges that these defendants (1) deliberately understaffed the prison to maximize profits, (2) failed to supervise or train medical personnel, and (3) acquiesced in systemic medical neglect. These theories fail as a matter of law.

Like any other entity potentially liable under §1983, CoreCivic cannot be held liable under § 1983 on the basis of *respondeat superior*. *Street v. Corr. Corp. of Am.*, 8 102 F.3d 810, 818 (6th Cir. 1996). Instead, Plaintiff must proceed under a so-called *Monell* theory of liability; this requires alleging a corporate policy, custom, or practice of the entity defendant (here, CoreCivic) that directly caused the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

To establish an Eight Amendment deliberate indifference claim under § 1983, a plaintiff must demonstrate that someone acting under color of state law acted with 'deliberate indifference' to a substantial risk of serious harm to the plaintiff (or, as here, the plaintiff's decedent). As a preliminary matter, the Sixth Circuit's decision in *Caraway v. CoreCivic of Tennessee*, LLC, 2024 WL 1546522 (6th Cir. Apr. 10, 2024), outlined this standard in focusing on the threshold question of whether the plaintiff had adequately alleged a constitutional violation by any defendant. That threshold inquiry is critical, as the existence of a constitutional violation is a necessary predicate for § 1983 liability—whether asserted against a corporate entity like CoreCivic or against individual defendants. See *id.* at 686–87.

In *Caraway*, the Sixth Circuit reiterated that a viable deliberate indifference claim under the Eighth Amendment requires a plaintiff to plead sufficient facts supporting both the objective component (that the decedent faced a substantial risk of serious harm) and the subjective component (that the defendant knew of and disregarded that risk). The plaintiff in *Caraway* failed to satisfy even the objective component, and the court held that "[t]he estate's complaint fail[ed] to adequately plead an objectively serious risk of harm. That's enough to sink its Eighth-Amendment claim." *Id.* at 686.

In their Motion, Defendants correctly note that Plaintiff's allegations fall short because they are not tethered to any specific policy, decisionmaker, or instance of causal connection to Lowrance's death (Doc. No. 36 at 11–14). The Second Amended Complaint makes broad allegations about understaffing at CoreCivic-run facilities, citing lawsuits and audits from as early as 2017, including incidents at prisons in Idaho, Mississippi, Kansas, and Oklahoma (Doc. No. 34 ¶¶ 34–44). Yet Plaintiff fails to link these references to conditions at TTCC in 2022–2023, let alone to Lowrance's dental or emergency medical care.

The Sixth Circuit in *Caraway,* in affirming dismissal of similar *Monell* claims, held that a plaintiff's "generalized allegations" of corporate understaffing were legally insufficient under *Twombly* and *Iqbal* because they did not serve to plausibly suggest that the alleged understaffing directly caused the harm at issue. (*Id.* at *4.) "[I]t's not enough to simply state that the causation requirement is satisfied; that legal conclusion must be supported by [s]ome factual basis showing a causal link." (*Id.*)

Like the plaintiff in *Caraway*, Plaintiff here fails to connect the dots. The audits cited predate the incident by over three years and say nothing about the staffing level on April 4–5, 2023. The Second Amended Complaint neither alleges that the delay in Lowrance's treatment was

caused by insufficient staff coverage, nor makes allegations as to who received his sick-call request, whether medical protocols were triggered, or how these were thwarted by corporate policy. Such deficiencies are precisely the kind that led to the affirmance of the district court's dismissal in *Caraway*. *See Caraway*, 2024 WL 1546522, at *5.

Furthermore, Plaintiff's allegations (Doc. No. 34 ¶¶ 21–23) actually reflect that Nurse Roberson reviewed Lowrance's medical file on July 27, 2022, and that medical staff did respond to his sick call on April 5, 2023—albeit too late. That delay, tragic as it may be, does not plausibly suggest an official corporate policy of deliberate indifference.

Plaintiff attempts to avoid the consequence of these shortcomings by arguing that she cannot fully establish the causal connection until discovery, and that the issues of understaffing and supervision are matters of fact to be explored (Doc. No. 36at 8). But as Defendants note in reply (Doc. No. 41 at 4-5), this request improperly reverses the burden. It is well-settled that a party cannot "use the discovery process to obtain [the facts it needs to minimally support its claim to the extent required by *Iqbal* and *Twombly*] after filing suit." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011). *See also Iqbal*, 556 U.S. at 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Accordingly, Plaintiff fails to state § 1983 claims against CoreCivic, CMA, and Trousdale County. Alternatively, Plaintiff fails to state a claim against these three Defendants because

Plaintiff has not adequately alleged any underlying constitutional violation on which a *Monell* theory could be based.[2]

II. <u>Section 1983 Claims Against Individual Defendants (Counts II and IV)</u>

A. Warden Martin Frink

Plaintiff's claim against Warden Frink (Count II) rests on a theory of supervisory liability, alleging that, as an employee and agent of CoreCivic with policymaking authority, either instituted policies or entrenched customs, or knowingly acquiesced in the establishment or continuation of such policies or customs, that directly and proximately caused the deprivation of the decedent's constitutional rights. (Doc. No. 34 ¶¶ 8, 58–60). For supervisory liability to attach, the Sixth Circuit requires a showing that a supervisor "at least implicitly authorized, approved, or knowingly acquiesced" in the unconstitutional conduct. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The Second Amended Complaint, however, fails to allege that Warden Frink was even aware of Lowrance's sick-call request or medical condition.

As Defendants argue (Doc. No. 36 at 16), Plaintiff does not plausibly allege that Warden Frink knew of and disregarded any specific risk to Lowrance. Nor does she allege that he directed or encouraged any conduct that contributed to the delay in treatment. These omissions are fatal and therefore, these claims should be dismissed.

---

[2] *Caraway* brings home the (nearly self-evident) point that there can be no valid claim for *Monell* liability absent adequate allegations of an underlying constitutional violation. In *Caraway*, the Sixth Circuit did not address *Monell* liability first, but instead first focused on whether the plaintiff had adequately alleged an Eighth Amendment violation. Once the court found (for reasons discussed below) that the plaintiffs failed to state an Eighth Amendment violation, the court noted that the *Monell* claims failed because "the complaint doesn't allege an underlying constitutional violation." 98 F.4th at 687.

B. Dr. Sara Owen and Nurse Misty Roberson

Plaintiff alleges that Dr. Owen, as CMA's Responsible Health Authority (RHA), failed to supervise medical staff or review charts (Doc. No. 34 ¶¶ 31–33), and that Nurse Roberson reviewed Lowrance's chart but took no further action (*Id.* ¶ 22). These allegations (Count IV) are insufficient to establish deliberate indifference on the part of these two Defendants.

To sustain such a claim, Plaintiff must allege that a defendant knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). But the Second Amended Complaint contains no allegation that either Owen or Roberson knew of Lowrance's April 4 sick-call request or that they were aware of his deteriorating condition. As the Sixth Circuit recently made clear, generalized allegations that supervisory staff failed to monitor subordinates do not satisfy pleading standards. *See Caraway*, 2024 WL 1546522, at *6.

Further, as Defendants argue, Plaintiff alleges neither that Roberson or Owen interacted with Lowrance after his intake in July 2022, nor that they ignored any requests for care. In short, there is a complete lack of factual matter suggesting deliberate indifference on the part of either Robertson or Owen. Thus, the allegations fail to establish deliberate indifference on the part of either of the individual medical providers, including deliberate indifference predicated on any supervisory role they may have held.

Accordingly, the claims against Defendants Frink, Owen, and Roberson must be dismissed.

III. <u>State-Law Claims</u>

With the federal claims having been disposed of as discussed above, that leaves Plaintiff's state law claims. Those claims are set forth in Count V (healthcare liability pursuant to the Tennessee Healthcare Liability Act, Tenn. Code Ann. § 29-26-101 et seq); Count VI (for

negligence and negligence *per* se against three Defendants) and Count VII (for gross negligence against all Defendants).

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Strategic Turnaround Equity Partners, L.P. (CAYMAN) v. Fife*, No. 10-CV-11305, 2010 WL 2630363, at *11 (E.D. Mich. June 28, 2010) ("As the Sixth Circuit has noted repeatedly, a federal court should typically decline to address supplemental jurisdiction over a plaintiff's state law claims after dismissing [the plaintiff's] federal claims."). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the exercise of supplemental jurisdiction as to Plaintiff's state-law claims. Because Plaintiff's federal claims all

have been dismissed, the Court declines to exercise supplemental jurisdiction over the state-law medical malpractice claim. *See* 28 U.S.C. § 1367(c)(3); *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004). Notably, in declining to exercise jurisdiction, the Court is declining to consider Defendants' request for dismissal specifically pursuant to Rule 12(b)(6). Plaintiff at her option may seek to file them in a state court.

## CONCLUSION

For the reasons set forth herein, the Motion (Doc. No. 35) is GRANTED IN PART AND DENIED IN PART. Specifically, it is granted: (a) in full with respect to Plaintiff's federal claims, in that all federal claims are dismissed for failure to state a claim pursuant to Rule 12(b)(6); and (b) only in part as to the state-claw claims, in that although those claims are dismissed as requested, such dismissal is based on declination of jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) rather than on failure to state a claim pursuant to Rule 12(b)(6).[3]

The Clerk is directed to enter judgment under Rule 58 of the Federal Rules of Civil Procedure and close the file.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[3] A dismissal under Rule 12(b)(6) is typically a dismissal with prejudice, while a dismissal for lack of jurisdiction is without prejudice. *See Miller v. Collins,* No. 23-3191, 2023 WL 7303305, at *4 (6th Cir. Nov. 6, 2023) ("[D]ismissals pursuant to Rule 12(b)(6) are 'judgment[s] on the merits' and are therefore presumed to be with prejudice." (quoting *Pratt v. Ventas, Inc.*, 365 F.3d 514, 522 (6th Cir. 2004) (internal citation omitted)); *Michigan Surgery Inv., LLC v. Arman*, 627 F.3d 572, 576-77 (6th Cir. 2010) ("Dismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice." (quoting *Mitan v. Int'l Fid. Ins. Co.,* 23 Fed. Appx. 292, 298 (6th Cir.2001). So the upshot of the Court's decision here is that the state-claw claims are dismissed without prejudice, rather than with prejudice as Defendants' requested.